DOUGALL
v.
SPOKANE, P. & S. RY. CO.
No. 13492.

United States Court of Appeals,
Ninth Circuit.

Nov. 5, 1953.

844

Elton Watkins, Portland, Or., for appellant.

Hugh L. Biggs & Cleveland C. Cory, Portland, Or., for appellee.

Don Eastvold, Atty. Gen., State of Washington, and Bernard A. Johnson,

Asst. Atty. Gen., State of Washington, amicus curiae.

Before HEALY and POPE, Circuit Judges, and LEMMON, District Judge.

LEMMON, District Judge.

Appellant sought to recover damages for injuries sustained by him while working on appellee's railroad right of way. Following a trial of the sole issue of liability the trial judge made findings of fact and conclusions of law adverse to appellant. He appeals from a judgment of dismissal entered thereon.

The question raised on this appeal involves the applicability of the Federal Employers' Liability Act.[1]

We refer to appellee as Spokane, to Morrison-Knudsen Company, Inc., as M-K, and to the Federal Employers' Liability Act as FELA.

A pre-trial order, approved by respective counsel, was entered. Therein the parties agreed that the defendant was during all times pertinent a common carrier by railroad within the meaning of FELA; M-K during said times was a corporation engaged as a general contractor in heavy or engineering type of construction, including railroads; M-K is a wholly independent corporation, in which neither Spokane nor any of its affiliates has ever owned or controlled any stock or interest.

Spokane and M-K entered into a written contract and supplement thereto in which M-K agreed to perform certain work upon Spokane's roadway and right of way, consisting of cleaning out ditches, sloping cuts, restoring and widening banks, and correcting drainage. Plaintiff was employed by M-K as a member of its construction crew and was engaged in performing work on Spokane's roadbed and right of way pursuant to that contract when he sustained the injuries which are the subject of the action.

In the performance of the work M-K used a motor truck and flat car, each with four wheels, with flanges thereon to enable its equipment to run and operate upon Spokane's rails and tracks. A standard ditcher, dragline outfit, boom, cable, drum and other needed equipment were placed on the flat car and the power for pulling the car along the tracks was supplied by the motor truck. Neither the truck nor car was equipped with driving wheel brakes, a train brake system or with automatic couplers, and the car was not equipped with secure grab irons or handholds on the ends or sides of the car, or with sill steps or train brakes.

The issues left for determination included the status of employment of appellant at the time of his injury; whether M-K was an independent contractor or vice-principal or agent of Spokane in the performance of the work; and whether the contract between Spokane and M-K was entered into with the purpose or intent on the part of Spokane to evade the FELA by exempting itself from any liability to workmen performing the work.

■ Appellant complains that he was denied trial by jury. This is without merit. The record discloses that he waived trial by jury,[2] by failing to make and serve a timely demand.[3] Thereafter he filed a motion for a jury trial. How this motion was called to the attention of the trial court does not directly appear. However, the minutes of the court reveal an order that the issue of liability be heard without a jury. It was within the judge's discretion to order trial by jury though not demanded as provided by the rule. No claim is made that this discretion was abused by denial of the motion, nor do we find any abuse thereof.

■ The liability under FELA exists only when there is employment. The expressed condition is that the injury to or death of "the employee" occurs "while he

1. 45 U.S.C.A. §§ 51–60.

2. Rule 38(d), Rules of Civil Procedure, 28 U.S.C.A.

3. Rule 38(b), Rules of Civil Procedure, 28 U.S.C.A.

is employed by such carrier". 45 U.S. C.A. § 51. Employment as used there connotes a contract, a rendering of services for a compensation. By the use of these words in the statute Congress "intended to describe the conventional relation of employer and employee." Robinson v. Baltimore & Ohio Railroad Co., 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849; Latsko v. National Carloading Corp., 6 Cir., 192 F.2d 905, 910; Gaulden v. Southern Pacific Co., D.C.Cal. 78 F.Supp. 651, 656, affirmed, 9 Cir., 174 F.2d 1022.

■ Whether employment exists raises a legal question. But for whom work is being performed requires a consideration of the facts. The test is not for whose benefit the workman is performing services but who had the right to control him in the performance of his duties. 35 Am.Jur., Master and Servant, § 18, pages 455–456. There is before us a mixed question of law and fact.

Appellant was hired by M-K. Appellant's boss, who was the foreman in charge of the work in which appellant was engaged and who gave him direction as to what he was to do and when and how he was to do it, was an employee or agent of M-K. At all times during his employment appellant was paid for his work by M-K. M-K made contributions pursuant to the Workmen's Compensation Act of the State of Washington on behalf of appellant and deductions from his pay for state unemployment compensation, federal social security and federal income taxes. Since the accident he has received compensation payments as well as hospitalization and medical attention as an employee of M-K.

■ Appellant urges upon us the postulate that the work of repair, rehabilitation and improvement of the roadway and right of way of a railroad is in its nature such as to be nondelegable insofar as the rights and remedies under FELA of an employee doing the work are involved. As he states it, "The test

is not whether the contract reserves to the railroad the power of control over the employee on the work at the time the workman was injured; the test is whether the duty to keep in repair its tracks and roadbed is one that the railroad can assign to anyone and absolve itself from any liability flowing from the failure to furnish a safe place in which to work to those making the repairs." In effect he would have us overrule our per curiam approval[4] of the District Court's opinion in Norman v. Spokane-Portland & Seattle Railway Co., 101 F.Supp. 350, 352. We are satisfied that that opinion correctly states the law. We adhere to it. That holding is in keeping with decisions of the Supreme Court. See Robinson v. Baltimore & Ohio Railroad Co., supra, 237 U.S., at page 94, 35 S.Ct. 491; Wells Fargo & Co. v. Taylor, 254 U.S. 175, 187, 41 S.Ct. 93, 65 L.Ed. 205; Chicago R. I. & P. R. Co. v. Bond, 240 U.S. 449, 455–457, 36 S.Ct. 403, 60 L.Ed. 735.

Next, it is claimed, assuming the work of repair may be contracted to be done by a third party, thus absolving the railroad from liability to workmen, that result is not reached if the railroad retains the right to control or exercises control over the operations. Such is asserted to be the situation here. There is in appellant's testimony some support for this contention. But on this point there is a conflict in the evidence. E. B. Stanton, Chief Engineer and Assistant General Manager of Spokane, testified that he and other officials of the railroad inspected the progress of the work now and then. He also stated that Spokane did not supervise the work or have any participation in the choice of M-K personnel.

■ We attach no special significance to the presence at the scene of the work of a conductor and flagmen, employees of Spokane, nor to the interruption of the work due to operation of trains during the progress of the work. The duties of these trainmen consisted solely of relaying to M-K information as to proximate time of the passage of trains and seeing

4. Norman v. Spokane-Portland & Seattle Railway Co., 9 Cir., 192 F.2d 1020.

that the trains were not delayed by the work being done or by the presence of the M-K equipment on the tracks. These provisions in the contract were designed to minimize the inconvenience to each party and to the public resulting from the necessary operation of trains, and do not militate against the conclusion that the control of the work was in M-K. Gaulden v. Southern Pacific Company, supra. There was no retention by Spokane of the right to control the manner in which M-K was to do the work which it had contracted to do; only the right, a reasonable precaution, to see that the work did not interfere with the movement of the trains. This did not alter the status of M-K as an independent contractor. Chicago, Rock Island & Pacific Railway Company v. Bond, supra, 240 U.S. at pages 456–457, 36 S.Ct. 403.

Nor do the other provisions in the contract which are called to our attention require us to hold against the independent contractor relationship found to exist. It is pointed out that the contract permitted Spokane to stop the work or diminish the force, that Spokane might cancel the contract if M-K failed to perform, and that Spokane might designate where to load and unload the dump cars. However, the contract further specifically provided that the work should be performed "under the personal supervision of the Contractor", and appellant was doing the work of the contractor.[5] The contract in its entirety evinces the conventional status of independent contractor: under the contract M-K was responsible to Spokane as to the results of the work but not as to the means by which the results were accomplished.

We conclude that such control as Spokane had under the contract was not a detailed control that would render it liable as an employer. There is substantial evidence that the details of the work were not controlled by Spokane and the conduct of the parties shows that the control that was reserved was not intended to allow Spokane to dictate the details of the work. Cf. Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177, and Johnson v. Royal Indemnity Co., 5 Cir., 206 F.2d 561.

The finding that appellant was not an employee of Spokane is amply supported in the evidence.

■■■ We turn next to the claim that the contract is in violation of Section 5 of FELA,[6] which voids "any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter". The trial court found against this contention and its finding has substantial support in the agreed statement of facts and the evidence. The work which was contracted to be done was extensive. M-K was experience and had the needed equipment, consisting of on-and-off track machinery required for its efficient and expeditious performance. It had special crews of trained and qualified men. Due to priority restrictions, Spokane was unable at the time to procure the necessary equipment. It was more economical to Spokane to have M-K do the work than for Spokane to do it, had Spokane been able to get the equipment and the services of experienced crews. Since appellant was not an employee of Spokane but of an independent contractor,[7] the trial court's conclusion that it was neither the purpose nor the intent of the contracting parties to enable Spokane to exempt itself from liability under the statute was proper.

■■■ Appellant discusses in his brief the absolute duty imposed by the Safety Appliance Acts [8] and contends that the equipment which caused his in-

5. Cf. Casement v. Brown, 148 U.S. 615, 622, 13 S.Ct. 672, 37 L.Ed. 582; Gauldin v. Southern Pacific Co., supra.

6. 45 U.S.C.A. § 55.

7. Chicago, Rock Island & Pacific Ry. v. Bond, supra.

8. 45 U.S.C.A. §§ 1–46.

juries was used in violation of the provisions of that Act. The pre-trial order limits and ties his cause of action to the provisions of FELA. Incidentally, there was reserved the issue as to whether "the active or permissive use of equipment in violation of the Safety Appliance Act" was an act of negligence. True the two statutes are in *pari materia* and a violation of the Safety Appliance Act is negligence. San Antonio & A. P. Ry. Co. v. Wagner, 241 U.S. 476, 484, 36 S.Ct. 626, 60 L.Ed. 1110. But an action brought under FELA is an action under federal law and is confined to the relationship of employer and employee. It follows that violation of the Safety Appliance Act is of no moment in determining Spokane's liability under FELA if "employment" of appellant by Spokane is not shown. Another theory of action he might have had as a non-employee may not be urged here since it was not advanced in the trial court. Fowler v. Crown-Zellerbach Corporation, 9 Cir., 163 F.2d 773, 774.

Affirmed.